UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WILLIAM R. METALLO,

    Plaintiff,

v.	Case No:  6:14-cv-1975-Orl-40KRS

ORLANDO UTILITIES COMMISSION,
DAN KIRBY, JOHN HUGH DYER, and
WAYNE R. ZIMMERMAN,

    Defendants.

## OMNIBUS ORDER

This cause comes before the Court on the following:

1. Defendants' Motion to Dismiss and Alternative Motion for Summary Final Judgment and Supporting Memorandum of Law (Doc. 14), filed February 18, 2015;

2. Plaintiff's Response to Defendants' Motion to Dismiss Plaintiff's Original Complaint (Doc. 23), filed March 11, 2015;

3. Defendants' Opposed Motion for Case Management Conference (Doc. 38), filed August 4, 2015;

4. Plaintiff's Opposed Motion for Case Management Conference (Doc. 40), filed August 10, 2015; and

5. Plaintiff's Motion for Sanctions (Doc. 41), filed August 10, 2015.

**I.   BACKGROUND[1]**

*Pro se* Plaintiff, William R. Metallo, sues his utility company, Orlando Utilities Commission ("OUC"), and its board members over fees OUC charges him for the use of an analog electric meter.  While it is not immediately clear from the Complaint, Metallo apparently has electromagnetic hypersensitivity ("EHS"), a condition which causes him to experience adverse health effects when exposed to electromagnetic fields, such as those emitted by electronic devices.  (*See* Doc. 1, ¶¶ 7, 22).

On an unspecified date in 2014, OUC replaced the analog electric meter attached to Metallo's home with a new digital meter.  (*Id.* ¶ 5).[2]  Metallo claims that this digital meter caused him to suffer "many physical and emotional problems," including:

> [S]leepless nights, violent headaches, respiratory problems and frequent sneezing, low frequen[c]y humming and buzzing noises that produced shrill ear ringing . . . distraction concerning household functions, skin rashes, frequent power outages that created inconveniences and clock re-settings, lack of concentration, confusion and memory loss, insomnia, and inability to return to sleep, dry skin . . . and violent ear ringing that exacerbated his tinnitus condition.

(*Id.*).  As a result, Metallo demanded that OUC remove the digital meter and return the analog meter.  (*Id.* ¶ 23).  Although OUC ultimately acquiesced, OUC charged Metallo a one-time enrollment fee of $95 to replace the digital meter with the analog meter and

---

[1]  This account of the facts is taken from Plaintiff's Complaint (Doc. 1), the allegations of which the Court must accept as true in considering Defendants' motion to dismiss. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

[2]  Defendants reveal in their motion to dismiss that OUC has been upgrading its infrastructure by replacing all analog meters with digital meters that can be read remotely, thus allowing OUC to save money on labor, fuel, and reporting costs associated with manually reading analog meters.  (Doc. 14, p. 2).

continues to charge him a recurring $13 monthly fee for opting out of OUC's digital meter program. (*Id.*). Metallo has paid and continues to pay these fees under protest. (*Id.*).

On November 26, 2014, Metallo initiated this lawsuit against OUC and its board members by filing what appears on its face to be a one-count Complaint. (Doc. 1). Metallo essentially claims that Defendants have discriminated against him as a qualified individual with a disability under the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213, by charging him fees to opt out of OUC's digital meter program. Defendants now move to dismiss Metallo's Complaint, or in the alternative, for summary judgment. (Doc. 14).

## II.   DISCUSSION

### A.   Defendant's Motion to Dismiss[3]

#### 1.   Standard of Review

A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. In order to survive a motion to dismiss made under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiff alleges enough facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mere legal conclusions or recitation of the elements of a claim

---

[3] Defendants invite the Court to treat its motion to dismiss as a motion for summary judgment. (Doc. 14, p. 8). Federal Rule of Civil Procedure 12(d) requires a district court to convert a Rule 12(b)(6) motion to dismiss to a Rule 56 motion for summary judgment if the parties present, and the Court considers, matters outside of the pleadings. In the instant case, the Court declines to venture beyond the four corners of the Complaint and will limit its analysis solely to Rule 12(b)(6). *See Jones v. Auto. Ins. Co. of Hartford, Conn.*, 917 F.2d 1528, 1531–32 (11th Cir. 1990).

are not enough. *Twombly*, 550 U.S. at 555. District courts must accept all well-pleaded allegations within the complaint as true. *Id.* Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994).

The Court additionally has a duty to liberally construe a *pro se* plaintiff's complaint and to afford greater leeway in alleging a claim than what is given to licensed attorneys. *Tennyson v. ASCAP*, 477 F. App'x 608, 609–10 (11th Cir. 2012) (per curiam). Nevertheless, "a *pro se* party must follow the rules of procedure and evidence, and the district court has no duty to act as [a *pro se* party's] lawyer." *Id.* at 610 (internal quotation marks omitted); *see also Porter v. Duval Cnty. Sch. Bd.*, 406 F. App'x 460, 462 (11th Cir. 2010) (per curiam). Further, a district court may not "rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Iqbal*, 556 U.S. 662 (2009).

## 2. Metallo States a Claim Under the ADA

Title II of the ADA makes it unlawful for a public entity such as OUC to discriminate against disabled persons in the provision of benefits, services, programs, or activities. 42 U.S.C. § 12132. To state a claim under Title II, a plaintiff must establish three elements: (1) he is a qualified individual with a disability, (2) he was excluded from participation in or denied the benefits of the defendant's services, programs, or activities, and (3) such exclusion was because of his disability. *Ass'n for Disabled Ams. v. City of*

*Orlando*, 153 F. Supp. 2d 1310, 1321 (M.D. Fla. 2001). Defendants challenge Metallo's Complaint for failing to sufficiently allege all three elements.

First, Defendants contend that Metallo is not a "qualified individual with a disability" because EHS is not a recognized disability and, even if it were, Metallo's allegations regarding his EHS do not rise to the level of a disability under the ADA. Specifically, Defendants state that Metallo only lists symptoms allegedly caused by EHS and nothing more. (Doc. 14, pp. 9–11).

A person is a "qualified individual with a disability" under the ADA when he has a disability and, with or without reasonable modifications, meets the essential eligibility requirements for the receipt of services provided by a public entity. 42 U.S.C. § 12131(2). With respect to the term "disability," an individual is disabled when he has "a physical or mental impairment that substantially limits one or more major life activities." *Id.* § 12102(1)(A). Importantly, courts are to construe the term "disability" broadly in order to afford the ADA its maximum reach. *Id.* § 12102(4)(A). "Major life activities" include seeing, hearing, sleeping, learning, reading, concentrating, thinking, and communicating. *Id.* § 12102(2)(A). A disability may "substantially limit" a major life activity when the individual in question suffers "a significant restriction as to the condition, manner, or duration under which [he] can perform [the] major life activity as compared to that of the average person in the general population." *E.E.O.C. v. Am. Tool & Mold, Inc.*, 21 F. Supp. 3d 1268, 1274 (M.D. Fla. 2014).

While Metallo does not confirm that he has been diagnosed with EHS or that he has received any sort of medical treatment for EHS, Metallo states that OUC's digital meter activated symptoms specifically associated with EHS, such as insomnia, "loud and

violent ear ringing," and a significant decrease in his ability to concentrate and remember. (Doc. 1, ¶ 5). Because all of these issues involve substantial limitations to major life activities and derive from some sort of physical or mental impairment, the Court can reasonably infer that Metallo has a disability. To the extent Defendants challenge EHS as an actual disability or whether Metallo in fact suffers from EHS, Defendants essentially ask the Court to prematurely address the merits of the case. At this stage of the proceedings, it is enough for Metallo to allege symptoms specifically linked to a mental or physical condition that substantially limits his ability to perform at least one major life activity, thereby placing Defendants on notice of his claims.

Second, Defendants assert that Metallo fails to allege sufficient facts showing that he was excluded from participation in, or denied the benefits of, OUC's services, programs, or activities. Defendants point to the fact that OUC ultimately agreed to replace Metallo's digital meter with an analog meter and that Metallo continues to receive full utility services from OUC to this day. (Doc. 14, p. 11). However, a public entity denies the benefits of its services to a disabled person when it provides services that are not equal to services provided to non-disabled persons. 28 C.F.R. § 35.130(b)(1)(ii). Metallo alleges in his Complaint that OUC charges him additional fees and costs to receive the same utility services as everyone else. (Doc. 1, ¶ 23). From this, the Court can reasonably infer that the more expensive utilities OUC provides to Metallo are not equal to the less expensive utilities it provides to non-disabled persons and, therefore, that Metallo has been denied the benefits of OUC's services.

Lastly, Defendants state that Metallo cannot show that any alleged discrimination by OUC was because of Metallo's disability. Defendants argue that the one-time $95

enrollment fee and recurring $13 monthly fee for using an analog meter applies equally to all customers who opt out of the digital meter upgrade, regardless of whether they are disabled or not. As such, Defendants conclude that these surcharges are not imposed because of a disability. (Doc. 14, pp. 11–12).

However, a public entity engages in discriminatory conduct when it "place[s] a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures . . . that are required to provide that individual or group with the nondiscriminatory treatment required by the [ADA]." 28 C.F.R. § 35.130(f). Here, Metallo alleges that OUC charged him the $95 enrollment fee and continues to charge him the recurring $13 monthly fee as surcharges for replacing the digital meter at his home with an analog meter and for reading the analog meter each month. (Doc. 1, ¶¶ 23–24). From this, the Court can reasonably infer that OUC has placed impermissible surcharges on equipment and services that are required for OUC to comply with Metallo's ADA rights. As a result, Metallo has sufficiently alleged a connection between OUC's fees and Metallo's alleged disability.

Because Metallo has alleged sufficient factual material to show that he is a qualified individual with a disability, that he was denied the benefits of OUC's services, and that such exclusion was because of his disability, Defendants' motion to dismiss will be denied as to the ADA claim.

### 3.     Metallo Fails to State a Claim Under 42 U.S.C. § 1983

Although Metallo does not directly enumerate a civil rights claim under § 1983, he mentions § 1983 in several places in both his Complaint and his response in opposition to Defendants' motion to dismiss. Defendants move to dismiss the Complaint for failing

to state a claim under § 1983 because Defendants contend that the ADA provides adequate relief for Metallo's claims. (Doc. 14, pp. 13–14).

It is true that a plaintiff may generally "bring a cause of action pursuant to section 1983 to remedy violations of both the federal constitution and federal statutes." *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1530 (11th Cir. 1997). One exception to this rule, however, is where Congress has explicitly foreclosed enforcement of § 1983 by providing a comprehensive remedial framework. *Id.* at 1530–31. It is well-settled in the Eleventh Circuit that the ADA precludes § 1983 claims where the conduct the plaintiff complains of can be sufficiently remedied by the ADA. *See id.* Because Metallo's claim of disability discrimination is such a claim, he may not also proceed under § 1983. Defendant's motion to dismiss is therefore granted to the extent the Complaint alleges a claim arising under § 1983.

### 4. Injunctive Relief

Finally, Defendants move to dismiss the Complaint to the extent it requests injunctive relief. (Doc. 14, p. 15). However, injunctive relief is not a claim in and of itself that is subject to scrutiny under Rule 12(b)(6), but rather a remedy that is available upon a finding of liability. *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005), *cert. denied*, 547 U.S. 1192 (2006); *Transatlantic, LLC v. Humana, Inc.*, No. 8:13-CV-1925-T-17TBM, 2014 WL 5039667, at *9 (M.D. Fla. Sept. 30, 2014). For that reason, Defendants' motion to dismiss will be denied to the extent Defendants seek the dismissal of Metallo's request for injunctive relief as a potential remedy for his ADA claim.

### B. Metallo's Motion for Sanctions

Metallo moves the Court to impose sanctions against Defendants' attorneys for a number of reasons, the most pertinent of which are that counsel for Defendants have submitted frivolous motions to the Court and have objected and refuse to respond to certain discovery requests. Upon review of the papers Defendants have filed in this case, the Court finds no conduct worthy of sanctions. It appears that counsel has at all times conducted themselves in a professional manner and have engaged with Metallo in a good faith effort to address discovery disputes and settlement efforts. Moreover, a party to litigation is entitled to object and refuse to respond to a discovery request as long as the party has a good faith basis for doing so. To the extent Metallo opposes a particular objection, he should file a motion to compel the discovery he seeks and explain why his discovery request is relevant to his ADA claim. The Court will then determine whether Defendants' objection is valid or not. Otherwise, there is no reason to sanction a party simply for objecting to discovery.

On this point, the Court takes this opportunity to caution Metallo that filing a motion for sanctions is a serious matter that should be reserved only for the most egregious, bad faith, or vexatious misconduct. Simply because a party disagrees with another party during the course of litigation is nowhere near sufficient to rise to the level of sanctionable conduct. Further, although Metallo proceeds in this matter *pro se*, he is expected to conduct himself in the same courteous and good faith manner as his opponents. Should Metallo wish to file a motion for sanctions in the future, he should consider whether the conduct he takes issue with truly rises to the level of misconduct contemplated by Federal Rule of Civil Procedure 11. Metallo's motion for sanctions will be denied.

### C. The Parties' Motions for Case Management Conference

Defendants ask the Court to conduct a pretrial conference in order to address the scope of discovery in this case, as Plaintiff has propounded seventy-six interrogatories, 121 requests for admissions, and 180 requests for production on Defendants, many of which Defendants contend are duplicative, harassing, or wholly irrelevant to this lawsuit. As the number of interrogatories propounded is clearly beyond what is permitted by the Court's Case Management and Scheduling Order and the number of requests for admissions and for production is likely excessive, the Court agrees that it would be prudent to conduct a pretrial conference in this case. Metallo also requests a pretrial conference, but only after Defendants have responded to all of his discovery requests. Defendants' motion will be granted and this case will be referred to the assigned Magistrate Judge to schedule a pretrial conference. Metallo's motion will be denied.

## III. CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED**:

1. Defendants' Motion to Dismiss and Alternative Motion for Summary Final Judgment and Supporting Memorandum of Law (Doc. 14) is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. Defendants' motion is **GRANTED** to the extent Defendants move to dismiss the Complaint for failing to state a claim under 42 U.S.C. § 1983. Plaintiff's § 1983 claim is **DISMISSED WITH PREJUDICE**.

   b. Defendants' motion is otherwise **DENIED**.

2. Defendants shall answer Plaintiff's Complaint within **fourteen (14) days** of this Order.

3. Defendants' Opposed Motion for Case Management Conference (Doc. 38) is **GRANTED**. This case is **REFERRED** to the Magistrate Judge to conduct a pretrial conference and to enter any order necessary to accomplish the purposes of Federal Rule of Civil Procedure 16. The parties shall attend the pretrial conference at the Magistrate Judge's direction.

4. Plaintiff's Opposed Motion for Case Management Conference (Doc. 40) is **DENIED**.

5. Plaintiff's Motion for Sanctions (Doc. 41) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on September 1, 2015.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

The Honorable Magistrate Judge
Counsel of Record
*Pro se* Plaintiff